**Subject:** Case # 24-45157 - Retainer Agreement with Law Office of Julio E. Portilla, Esq.

I didn't find that the law office of Julio E. Portilla, Esq. notify the Court in this case that on December 20, 2024, he took over the responsibility as a lawyer to represent me in your court in
Case # 24-45157.

Therefore, attached the representation agreement that done 10 days after the case was opened and filed in the Bankruptcy Court.

# LAW OFFICE OF
# JULIO E. PORTILLA, P.C.

380 LEXINGTON AVENUE, SUITE 446
NEW YORK, NY 10168
PHONE: (212) 365-0292 | FAX: (212) 365-4417 | EMAIL: jp@julioportillalaw.com

## RETAINER AGREEMENT
## THIS IS A LEGALLY BINDING CONTRACT
## PLEASE READ CAREFULLY

### PRIVILEGED & CONFIDENTIAL
### FOR THE ADDRESSEE'S EYES ONLY

This Retainer Agreement is furnished to you in accordance with Part §1215.1(c) of the Joint Rules of the Appellate Division of the Supreme Court for the State of New York

**THIS AGREEMENT** (hereinafter called the "Agreement"), made and entered into this 22nd day of August 2024, by and between the **LAW OFFICE OF JULIO E. PORTILLA, P.C.** (hereinafter called the "Firm") and **RAVIV GIDEON on behalf of 68 BURNS NEW HOLDINGS, INC.** (collectively the "Clients") sets forth the terms of your retention of this Firm to provide legal services and related legal advice in connection with bankruptcy case that is currently pending with United States Bankruptcy Court for the Eastern District of New York under Case No. 24-45157.

1. **GENERAL TERMS**

    (a)     This Agreement sets forth the terms of your retention of the Law Office of Julio E. Portilla, P.C. to provide legal services and constitutes an agreement between Client and the Firm. The Agreement sets forth our entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters, except where we otherwise agree in writing (e.g., by signing a different Agreement). Unless otherwise agreed in writing the terms of this Agreement will also apply to any additional matters that the Firm handles on behalf of Client.

2. **NATURE OF SERVICES TO BE RENDERED**

    a)      The Firm's representation in this matter will end, unless otherwise agreed upon in writing and signed by the Parties, when there is an Order issued by the United States Bankruptcy Court or an agreement or settlement.

    b)      The Client authorizes the Firm to take any steps which, in the sole discretion of the Firm, are deemed necessary or appropriate to protect the Client's interest in the matter.

3. **BILLING PROCEDURES & AMOUNT OF "RETAINER"**

    a)      The Client will provide to the Firm a "classic retainer" in the amount of **US $15,000.00** as defined in *In re Production Associates*, Ltd., 264 B.R. 180, 184 85 (Bankr. N.D. Ill. 2001), *and In re McDonald Bros. Construction, Inc.*, 114 B.R. 989, 997 99 (Bankr. N.D. Ill.

1990). The initial amount of the classic retainer was set to approximate our estimate of fees and expenses expected to be accrued and unpaid by the Client between payment cycles. The Firm's estimate of expected fees and expenses may change based on actual or expected fees and expenses incurred or expected to be incurred, as applicable. Further, the Client agrees to increase or replenish the classic retainer upon receiving invoices from the Firm so that the classic retainer amount remains at or above the Firm's estimated fees and expenses expected to be accrued and unpaid by the Client between payment cycles.

b) The classic retainer will be placed into the Firm's general cash account, will not be held in a separate account on your behalf, and you will not receive any interest on these monies. You have no interest in the classic retainer. This amount does not constitute a security deposit.

c) This Initial Retainer does not necessarily represent the overall fee amount that may be incurred by the services being provided. The amount of the total fee will be based upon the Firm's hourly rate (measured in six-minute increments or *0.1 of an hour*) for the purpose of performing services for your matter. Records will be kept of all time expended by our personnel. Our current hourly rates, which are subject to change during the course of the Engagement Matter, are as follows:

> Julio E. Portilla, Esq.: **$575.00**
> Associates: **$475.00**
> Paralegals: **$125.00**

d) *EXPENSES* related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on the Client's behalf. Such expenses include photocopying, printing, scanning, witness fees, filing and recording fees, postage, express mail and messenger charges, deposition costs, computerized legal research charges, and other computer services.

e) The Firm will tender statements for professional services and related costs and disbursements on a monthly basis. These statements are for informational purposes only and no fees may be paid without an appropriate Order of the United States Bankruptcy Court. Said Order must be made by application on notice to all creditors.

4. **METHOD OF PAYMENTS**

a) Payment of the Retainer may be made by cash, debit card, check, money order, or wire transfer. Wiring instructions will be given upon request.

b) The Client understands that if any check given in payment to the Firm is returned for insufficient funds, the Client agrees to immediately pay the Firm a $35.00 fee in addition to the amount of the returned check. This payment and any future payments must, therefore, be made in cash, money order, debit card, or wire transfer.

5. **EFFECTIVE DATE**

a). This agreement will not take effect, and we will have no obligation to provide services to you until you return a signed copy of this agreement together with the required retainer, but the effective date of this agreement will be retroactive to the date we first provided legal services to you. Even if this agreement is not executed and returned to you, you must pay the reasonable value of any services we have performed for you at your direction. No modification to this agreement will be effective unless it is in writing and signed by both of you and us. Facsimile signatures are as effective as original signatures.

6. **TERMINATION OF ATTORNEY-CLIENT RELATIONSHIP**

a) **Client's Termination of Services**. You are entitled to terminate this engagement for any reason, subject to the Firm's right to be paid for services already rendered and expenses already incurred on your matter or any other service the Firm has provided for you. The Firm will only be paid pursuant to an Order of the United States Bankruptcy Court. Said Order must be by application on notice to all interested parties.

b) **Attorney Withdrawal**. The Firm may withdraw from engagement at any time permitted by law. The circumstances under which it may be permissible to withdraw include, but are not limited to, the following: (a) upon your consent or (b) if we determine that you have made a material misrepresentation to the Firm or omitted to disclose a material fact to the Firm, or (c) if, in the Firm's opinion, your conduct renders it unreasonably difficult for the Firm to carry out its retention effectively.

7. **CELL PHONE AND E-MAIL COMMUNICATION**

(a) The Firm hereby informs Client, and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their client's professionals and agents by cellphone or even via text messaging, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform this Firm that if you do not wish the Firm to discuss privileged matters on cell phones with Client or Client's professionals or agents.

(b) The Firm hereby informs Client, and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their client's professionals and agents by unencrypted email, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform this Firm that if you wish to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

8. **ARBITRATION**

a) In the event that a dispute arises between the Firm and Client in regard to the Firm's legal fee, the Client has the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which will be provided to you upon request.

9. **DISCLAIMER OF GUARANTEES**

a) Since the outcome of negotiations and litigation is subject to factors that cannot always be foreseen, Client acknowledges and understands that Attorney has made no promises or guarantees to Client concerning the outcome and is unable do so. Nothing in this Agreement shall be construed as such a promise or guarantee.

10. **ACKNOWLEDGMENTS AND UNDERSTANDING.**

a) Client acknowledges that Client has read and understands all the terms contained in this Agreement and that, whether written, spoken, recorded, or transcribed by any other means, no other terms are made part of this Agreement. It can be amended or modified only in writing and not orally or by course of conduct. If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end, the provisions of this Agreement are declared to be severable.

Dated: December 20, 2024

Client(s):

I HAVE READ AND UNDERSTAND THE ABOVE,
I RECEIVED A COPY AND ACCEPTED ALL OF ITS TERMS.

**68 BURNS NEW HOLDINGS, INC.**

By: RAVIV GIDEON

Accepted by:

**LAW OFFICE OF JULIO E. PORTILLA, P.C.**

JULIO E. PORTILLA, ESQ.
ATTORNEY

# STATEMENT OF CLIENT'S RIGHTS
## Section 120.01 of the Joint Rules of the Appellate Division (22 NYCRR§1210.1)

1. You are entitled to be treated with courtesy and consideration at all times by your lawyer and the other lawyers and personnel in your lawyer's office.

2. You are entitled to an attorney capable of handling your legal matter competently and diligently, in accordance with the highest standards of the profession. If you are not satisfied with how your matter is being handled, you have the right to withdraw from the attorney-client relationship at any time (court approval may be required in some matters and your attorney may have a claim against you for the value of services rendered to you up to the point of discharge).

3. You are entitled to your lawyer's independent professional judgment and undivided loyalty uncompromised by conflicts of interest.

4. You are entitled to be charged a reasonable fee and to have your lawyer explain at the outset how the fee will be computed and the manner and frequency of billing. You are entitled to request and receive a written itemized bill from your attorney at reasonable intervals. You may refuse to enter into any fee arrangement that you find unsatisfactory. In the event of a fee dispute, you may have the right to seek arbitration; your attorney will provide you with the necessary information regarding arbitration in the event of a fee dispute, or upon your request.

5. You are entitled to have your questions and concerns addressed in a prompt manner and to have your telephone calls returned promptly.

6. You are entitled to be kept informed as to the status of your matter and to request and receive copies of papers. You are entitled to sufficient information to allow you to participate meaningfully in the development of your matter.

7. You are entitled to have your legitimate objectives respected by your attorney; including whether or not to settle your matter (court approval of a settlement is required in some matters).

8. You have the right to privacy in your dealings with your lawyer and to have your secrets and confidences preserved to the extent permitted by law.

9. You are entitled to have your attorney conduct himself or herself ethically in accordance with the Code of Professional Responsibility.

10. You may not be refused representation on the basis of race, creed, color, religion, sex, sexual orientation, age, national origin, or disability.