UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------

In re:                                              **Chapter 11**

    68 Burns New Holdings, Inc.,                **Case No. 24-45157-NHL**
          Debtor.

-------------------------------------------------------

### EMERGENCY MOTION BY DEBTOR TO CONVERT HEARING TO IN-PERSON, APPOINT HEBREW INTERPRETER, TAKE JUDICIAL NOTICE OF MATERIAL EVIDENCE, DEFER RULING ON MOTION TO DISMISS OR CONVERT AND A 30-DAY CONTINUANCE TO RETAIN NEW COUNSEL

TO: THE HONORABLE NANCY HERSHEY LORD, UNITED STATES BANKRUPTCY COURT

HON. JUDGE LORD:

**COMES NOW** the Debtor, 68 Burns New Holdings, Inc. (the "Debtor"), by and through its

President, Gideon Raviv, and respectfully moves this Court on an emergency basis as follows:

    1.  This Emergency Motion is made in conjunction with the Debtor's prior

Emergency Motion filed on July 10, 2025, which sought a continuance of the hearing originally

scheduled for July 17, 2025, on the secured creditor's Motion to dismiss or convert under 11

U.S.C. §§ 362(d)(2), (d)(3), and/or 1112(b), and for a 30 day continuance for Debtor to retain

new counsel. The July 17 hearing has since been canceled, and the hearing is now scheduled for

July 22, 2025.

    2.  The Debtor respectfully requests that the July 22 hearing be converted from a

Zoom/Telephone proceeding to an in-person hearing to ensure clearer communication, better

presentation of documents and argument, and meaningful participation, especially given the

Debtor's current pro se status.

    3.  The Debtor further requests the appointment of a certified Hebrew interpreter for

the hearing, as the Debtor's President is not fully fluent in legal English and requires an

interpreter to understand and participate effectively.

    4.  The Debtor brings to the Court's attention newly discovered material evidence

impacting the secured creditor's legal standing: In <u>Goldfine v. Kelly</u>, 80 F. Supp.2d 153, 158

(S.D.N.Y. 2000), it was held that Mr. Eric Goldfine is both the sole trustee and sole beneficiary of the "Eric Goldfine Self Employed Retirement Plan and Trust" (the "Goldfine Trust").

5.    Under New York law, the merger doctrine renders a trust invalid where the sole trustee is also the sole beneficiary, as there is no separation of legal and equitable title. Consequently, the Goldfine Trust may be legally invalid and lack standing to assert claims, hold security interests, or seek relief in this bankruptcy proceeding.

6.    Due to this substantial issue of law and fact affecting the creditor's standing, the Debtor respectfully requests the Court to take judicial notice of the attached Order in *GOLDFINE v. KELLY* **(Exhibit A).**

7.    The Debtor requests that ruling on the secured creditor's motion to dismiss or convert be deferred until the Debtor retains new counsel who can investigate and fully brief this critical issue.

8.    The Debtor requests at least a 30-day continuance to obtain new legal representation and prepare proper legal arguments concerning creditor standing and lien validity.

9.    As previously detailed in the Emergency Motion filed by the Debtor on July 10, 2025, Debtor's current counsel has demonstrated a lack of professional responsibility by failing to fulfill commitments, communicate significant legal developments, or engage in strategic planning, thereby exposing the client to potential noncompliance with its legal obligations. As a result, the Debtor has effectively been left without adequate legal representation, and, as is often the case, it is the client—not the attorney—who bears the consequences of ineffective counsel.

10. **Exhibits B through R**, attached hereto, illustrate and support the Debtor's assertions regarding the conduct of Julio E. Portilla, Esq., Debtor's current counsel, and the detrimental impact his inaction and failures have had on the Debtor.

- **Exhibit B:**   Email correspondence from the undersigned to Mr. Portilla outlining Debtor's proposed plan to successfully exit bankruptcy. Ignored by Mr. Portilla. (Emailed by Debtor to Mr. Portilla on April 6, 2025).

- **Exhibit C:**   A copy of the proposed plan submitted to Mr. Portilla, which he failed to present to the Court. (Emailed by Debtor to Mr. Portilla on April 6, 2025).

**• Exhibit D:**   A follow-up communication in which the undersigned expressed concern over counsel's failure to acknowledge or respond to the proposed plan. (Emailed by Debtor to Mr. Portilla on April 19, 2025).

**• Exhibit E:**   A request to schedule a meeting to finalize and submit the proposed plan to the Court. (Emailed by Debtor to Mr. Portilla on April 28, 2025).

**• Exhibit F:**   A complaint to counsel regarding his failure to confirm whether he submitted the promised report and documentation to the Court, which he ultimately did not do. (Emailed by Debtor to Mr. Portilla on February 5, 2025).

**• Exhibit G:**   A request that counsel file a motion allowing the State Appellate Court to proceed with its review in parallel with the bankruptcy proceedings—again, ignored. (Emailed by Debtor to Mr. Portilla on February 7, 2025).

**• Exhibit H:**   A list of the Debtor's assets and related documentation submitted to counsel, which he disregarded. (Emailed by Debtor to Mr. Portilla on February 15, 2025).

**• Exhibit I:**   Further evidence of counsel's failure to raise two agreed-upon issues with the Court. (Emailed by Debtor to Mr. Portilla on May 13, 2025).

**• Exhibit J:**   An unanswered email requesting a response from counsel. (Emailed by Debtor to Mr. Portilla on May 14, 2025).

**• Exhibit K:**   A formal complaint to counsel concerning his continued lack of communication, the resulting prejudice to the Debtor's position, and a request for honest clarification regarding his willingness and ability to represent the Debtor. (Emailed by Debtor to Mr. Portilla on May 15, 2025).

**• Exhibit L:**   Additional correspondence noting the absence of any promised action. (Emailed by Debtor to Mr. Portilla on May 19, 2025).

**• Exhibit M:**   Counsel's assurance that he was working on the matter and would provide an update—no follow-up occurred. (An email from Mr. Portilla to Debtor on May 20, 2025).

**• Exhibit N:**   A reminder that over two weeks had passed with no action taken. (Emailed by Debtor to Mr. Portilla on May 24, 2025).

**• Exhibit O:**   Counsel's assertion that he was working on the monthly operating reports—yet again, nothing was filed. (An email from Mr. Portilla to Debtor on June 28, 2025).

- **Exhibit P:**     A renewed inquiry regarding the operating reports and a demand for transparency and accountability. (Emailed by Debtor to Mr. Portilla on July 2, 2025).

- **Exhibit Q:**     Counsel's representation that the monthly operating reports would be completed by July 7, 2025, and that he would then file an objection to the Court's Order—none of which has occurred to date. (An email from Mr. Portilla to Debtor on July 2, 2025).

- **Exhibit R:**     Counsel's latest communication indicating he is still "working on a response," with no substantive results provided. (An email from Mr. Portilla to Debtor on June 3, 2025).

11. No party will be prejudiced by this relief, and it serves the interests of justice, due process, and orderly administration of the case.

**WHEREFORE**, the Debtor respectfully requests the Court to enter an Order:

a.     Converting the July 22, 2025 hearing to an in-person proceeding;

b.     Appointing a certified Hebrew interpreter to assist the Debtor;

c.     Taking judicial notice of the attached *GOLDFINE v. KELLY* order **(Exhibit A)**, as to the Eric Goldfine Self Employed Retirement Plan and Trust standing and lien validity;

d.     Deferring ruling on the secured creditor's Motion to dismiss or convert pending retention of new counsel and further briefing;

e.     Granting the Debtor at least 30 days to retain new counsel; and

f.     Granting such other relief as the Court deems just and proper.

Dated: July 18, 2025

Respectfully submitted,

Gideon Raviv
President, 68 Burns New Holdings, Inc.
70-25 Yellowstone Blvd., Suite 3D
Forest Hills, NY 11375
Tel: (718) 268-6928
Email: Gideon1818@hotmail.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

| | |
|---|---|
| In re: | **Chapter 11** |
| 68 Burns New Holdings, Inc., | **Case No. 24-45157-NHL** |
| Debtor. | - |

------------------------------------------------------------

### CERTIFICATE OF SERVICE

I, Gideon Raviv, hereby certify that on July 18, 2025, I caused a true and correct copy of

the foregoing Emergency Motion by Debtor to convert hearing to in-person, appoint Hebrew

interpreter, take Judicial Notice of material evidence, defer ruling on Motion to dismiss or

convert and a 30-day continuance to retain new counsel to be served via email or first-class

mail upon the following parties:

1. U.S. Trustee
   Office of the United States Trustee
   Eastern District of NY (Brooklyn)
   Alexander Hamilton Custom House
   One Bowling Green
   Room 510
   New York, NY 10004-1408

2. Richard DuVall, Esq.
   Mackey Butts & Whalen LLP
   319 Mill Street
   Poughkeepsie, NY 12601
   Tel: (845) 452-4000
   Email: rduvall@mbwlawyers.com
   (Attorney for Secured Creditor Eric Goldfine Self-Employed Retirement Plan and Trust)

3. Julio E. Portilla, Esq.
   Law Office of Julio E. Portilla
   380 Lexington Avenue, Suite 446
   New York, NY 10168
   Tel: (212) 365-0292

1

Email: jp@julioportillalaw.com
(Current Attorney of Record for Debtor)

Dated: July 18, 2025

_____
Gideon Raviv
President, 68 Burns New Holdings, Inc.
70-25 Yellowstone Blvd., Suite 3D
Forest Hills, NY 11375
Tel: (718) 268-6928
Email: Gideon1818@hotmail.com

# EXHIBIT

# "A"

# Eric GOLDFINE, Plaintiff, v. M. Penny KELLY, Gerard Sciabbarrasi, Margaret Lloyd, Edward Polese, Eric Nelson and The City of New York, Defendants.

United States District Court, S.D. New York. Jan 3, 2000

GOLDFINE v. KELLY, (S.D.N.Y. 2000)
80 F. Supp. 2d 153 , 164 (Jan 3, 2000) Copy Cite
Smart Summary
Please sign up to generate summary.

---

## Eric GOLDFINE, Plaintiff, v. M. Penny KELLY, Gerard Sciabbarrasi, Margaret Lloyd, Edward Polese, Eric Nelson and The City of New York, Defendants.

*OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

This civil rights action arises out of plaintiff Eric Goldfine's attempts to develop a residential subdivision on property he owns within the watershed area for New York City. Defendants include the City of New York (the "City"), Penny Kelly, Margaret Lloyd, Edwin Polesi and Gerard Sciabarassi, all Department of Environmental Protection ("DEP") employees, and Eric Nelson, member of a civic association that opposed the development. In his complaint, plaintiff alleges unconstitutional taking of his property, denial of equal protection, denial of due process, conspiracy to interfere with his civil rights, and supervisory liability pursuant to 42 U.S.C. § 1983. Plaintiff also alleges pursuant to 42 U.S.C. § 1985 that defendants engaged in an alleged conspiracy to interfere with his civil rights.

The City and DEP employee defendants now move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's First Amended Verified Complaint ("the Complaint"). Defendant Nelson separately moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint. For the purposes of this opinion, the Court will treat defendants' motions together. For the reasons discussed below, the motions are granted.

## BACKGROUND

Plaintiff is the sole trustee and sole beneficiary of the Eric Goldfine Self-Employed Retirement Plan and Trust (the "Trust"). The Trust purchased approximately 512 acres of vacant real property ("Lakepointe Woods") in the Town of Carmel, County of Putnam, State of New York, for the purpose of developing a residential subdivision. In May 1995 plaintiff submitted a subdivision plan for a portion of Lakepointe Woods to the Town of Carmel Planning Board (the "Planning Board"). Pursuant to the advice of the Planning Board, plaintiff submitted a second, more expansive, plan to subdivide Lakepointe Woods into 105 lots for the construction of homes.

Defendant Nelson argues in his Memorandum of Law that plaintiff lacks standing to bring this action because the federal rights that plaintiff alleges have been violated belong to the Trust as property owner, and not to plaintiff as an individual. Because we find that all of plaintiff's claims should be dismissed on grounds other than standing, we need not consider Nelson's standing argument.

Lakepointe Woods is located within the area from which the City obtains its drinking water, known as the City of New York's watershed area. For this reason, various aspects of plaintiff's proposed development must comply with City regulations governing activities which can threaten water quality. The City has deemed Lakepointe Woods as being within one of the most sensitive or critical areas of the watershed. The Complaint contains two lines of allegations: those pertaining to environmental testing of the site by the DEP and those pertaining to the DEP's attempts to acquire the Lakepointe Woods land.

## I. *Site Testing Allegations*

After plaintiff submitted his subdivision plan, defendant Penny Kelly was assigned to be the DEP representative for the Lakepointe Woods project.

At an early Planning Board meeting, strong opposition to the Lakepoint Woods project was expressed by members of the China-Barrett Association (referred to in the Complaint as the "Sedgewood Club"), a civic association for adjacent property owners. Defendant Nelson is a representative of the Sedgewood Club. Plaintiff alleges that Kelly showed her allegiance to the Sedgewood Club by sitting with them at Planning Board meetings and speaking with them in the hallway.

Plaintiff's subdivision plan called for individual well and septic systems. This plan was conceptually approved by the Putnam County Department of Health and the State Health Department. Despite this approval, Kelly suggested to the Planning Board that plaintiff install central water and sewer systems.

In or about July 1996, the Planning Board granted Sketch Plan approval for the Lakepointe Woods development. Plaintiff began testing of the land in order to gather information to prepare the Draft Environmental Impact Statement ("DEIS") in accordance with the State Environmental Quality Review Act ("SEQRA"). The DEIS had to be submitted to the Planning Board before Preliminary Subdivision Approval could be obtained. Thereafter, Kelly began to oversee the preliminary fieldwork being done by plaintiff's project engineer. Plaintiff alleges that Kelly

demonstrated an "utter lack of cooperation to work with plaintiff, his engineer and staff to move forward with the required tests." (Compl. ¶ 34.) Plaintiff's allegations of Kelly's lack of cooperation include that Kelly canceled site visits, spent minimal time on the Lakepointe Woods site, worked slowly, conducted unnecessary independent soil tests, and refused to reveal any of her findings to plaintiff or plaintiff's engineer. (Compl. ¶¶ 35-46.) Plaintiff alleges that as a result of Kelly's refusal to share testing results, he has been unable to complete the requisite Environmental Impact Statement. (Compl. ¶ 49.) However, plaintiff did complete and circulate a DEIS. (Compl. ¶ 65.)

Plaintiff also alleges that Kelly demanded a water courses study of Lakepointe Woods after the DEIS was completed and asserted that a man-made drainage ditch was a "water course". Plaintiff disputes that the drainage ditch is a "water course" as defined by DEP's watershed regulations. If the drainage ditch is a water course, some 200 feet of a proposed road would have to be removed. That road connects to an existing road on the Sedgewood Club property.

In April 1998, plaintiff approached Kelly to discuss how to expedite the stormwater management process. Kelly told plaintiff to wait until after the upcoming public hearing on the DEIS to prepare the stormwater management plan. In June 1998, a public hearing on plaintiff's completed DEIS was held by the Planning Board. Kelly recommended to the Planning Board that it require plaintiff to file a supplement to the DEIS to adequately address stormwater issues. (Compl. ¶ 66.) Kelly also raised the issue of whether central water and sewer systems should be required at Lakepointe Woods.

In July 1998, plaintiff organized a meeting with two other DEP employees: defendant Margaret Lloyd, Kelly's supervisor, and defendant Edwin Polesi, supervisor of both Kelly and Lloyd. At the meeting, plaintiff advised Lloyd and Polesi of Kelly's lack of cooperation on the Lakepointe Woods project, and requested that she be removed from the project. Plaintiff alleges that although at the meeting defendants assured him that Kelly would be removed, later they informed him that Kelly would remain on the project. Plaintiff made additional requests in writing and orally for the removal of Kelly, but defendants declined to take any action.

In September and October 1998, Kelly became unavailable to conclude testing at Lakepointe Woods. A new representative was assigned, but that representative was not qualified to do the water course testing, so defendant Lloyd took over the project. Plaintiff alleges that Lloyd erroneously declared the curtain drain to be a "water course" and threatened plaintiff with a notice of violation for clearing land. Also, after Lloyd's visit to the site, DEP issued a letter declaring that the clearing of land may require a stormwater pollution prevention plan.

## II. *Attempts at Acquisition Allegations*

In early 1996, plaintiff was contacted by defendant Gerard Sciabbarrasi, a DEP employee. Sciabbarrasi informed plaintiff that the Lakepointe Woods property was located within the DEP's "critical acquisition zone 1A" based upon its proximity to a reservoir in the New York City Watershed. Because of its location, the DEP wanted to purchase Lakepointe Woods. Sciabbarrasi repeatedly telephoned plaintiff asking him to consider selling Lakepointe Woods to the DEP. Sciabbarrasi advised plaintiff that he and Kelly "had no connection" and there was a "Chinese

Wall" between the acquisition department of the DEP and Kelly's approval department. (Compl. ¶ 95.)

Plaintiff offered to sell the DEP two other parcels of land located in DEP's "critical 1B zone," but Sciabbarrasi declined, allegedly stating "I won't buy those properties because you will use those monies to develop Lakepointe." Sciabbarrasi then commissioned an independent appraisal of Lakepointe Woods without informing plaintiff.

In October 1997, Sciabbarrasi visited plaintiff at home and made a presentation regarding the acquisition of Lakepointe Woods. The Complaint alleges that Sciabbarrasi told plaintiff that Lakepoint Woods would bring in an offer of more than $4 million from the DEP. On the same day as his visit, Sciabbarrasi forwarded a draft copy of a standard DEP Contract of Sale, with the purchase price omitted, for plaintiff's review.

It was not until March or April 1998 that Sciabbarrasi contacted plaintiff to inform him that he was "outraged" by the results of DEP's first appraisal. (Compl. ¶ 118.) At Sciabbarrasi's recommendation, plaintiff had another appraisal done at his expense. At another meeting, plaintiff presented his appraisal of Lakepointe Woods for $4.75 million. Sciabbarrasi showed plaintiff his appraisal for approximately $2 million, but told plaintiff that he would order another appraisal. The second DEP appraisal was never completed. The DEP has never made an official offer to purchase the Lakepointe Woods property.

Plaintiff alleges that Sciabbarrasi or Kelly provided the appraisal information to defendant Nelson, president of Sedgewood Club. At a June 1998 Planning Board public hearing, Nelson read into the record: "We understand that the City of New York is now prepared to purchase the property in its undeveloped state for at least three times what Mr. Goldfine paid for it. . . ." (Compl. ¶ 126.) On the basis of this evidence, the Complaint alleges that Kelly, Sciabbarrasi and Nelson conspired to deprive plaintiff of his right to develop his property.

### III. *The Complaint*

On the basis of the foregoing facts, plaintiff brings the following causes of action:

In Counts 1 and 5, plaintiff brings claims under 42 U.S.C. § 1983 for unconstitutional taking of property without just compensation against defendants Kelly and Sciabbarrasi.

In Counts 2, 6, and 9, plaintiff brings claims under 42 U.S.C. § 1983 for unconstitutional denial of equal protection against defendants Kelly, Sciabbarrasi, and Lloyd.

In Counts 3 and 10, plaintiff brings claims under 42 U.S.C. § 1983 for unconstitutional denial of due process against defendants Kelly and Lloyd.

In Counts 4, 7, 11 and 14, plaintiff brings claims under 42 U.S.C. § 1983 for participation in a conspiracy to interfere with civil rights against defendants Kelly, Sciabbarrasi, Lloyd, and Nelson.

In Counts 8 and 12, plaintiff brings claims under 42 U.S.C. § 1983 against defendants Lloyd and Polesi for supervisory liability.

In Count 13, plaintiff brings a municipal liability claim against the City of New York under 42 U.S.C. § 1983.

In Count 15, plaintiff brings a cause of action under 42 U.S.C. § 1985 against all named defendants for conspiracy to interfere with civil rights.

In Count 16, plaintiff brings a cause of action against the City of New York pursuant to the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss under Rule 12(b)(6), the issue is "whether claimant is entitled to offer evidence to support claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See id.; Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993); *In re the AES Corp. Securities Litigation,* 825 F. Supp. 578, 583 (S.D.N.Y. 1993).

Before considering whether plaintiff has adequately alleged an unconstitutional taking, violations of due process or equal protection, supervisory liability, municipal liability, or a conspiracy to violate his civil rights, this court must determine whether any of the claims are ripe for adjudication.

### II. *Plaintiff's Taking, Due Process and Equal Protection Claims* A. *Ripeness*

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* ("*Williamson*"), the Supreme Court set forth a two-pronged test for determining whether a takings claim is ripe. 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). First, the government entity charged with enforcing the regulations at issue must have rendered a final decision. *Id.* Second, if the state provided a reasonable, certain and adequate provision for compensation, the plaintiff must have sought compensation from the state before its claim in federal court would be ripe. *Id.* at 194, 105 S.Ct. 3108.

Although in *Williamson* the ripeness test was applied to a takings claim only, the same ripeness test applies to due process and equal protection claims. *See Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 96-97 (2d Cir. 1992); *Herrington v. County of Sonoma,* 857 F.2d 567, 569 (9th Cir. 1988); *Unity Ventures v. County of Lake,* 841 F.2d 770, 775 (7th Cir. 1988). Therefore, we must determine whether plaintiff's unconstitutional taking, due process and equal protection claims are ripe. Because all of these claims arise out of the same nucleus of facts, the DEP's enforcement of

the Watershed Regulations as to Lakepointe Woods, including site testing and attempts at acquisition, the ripeness inquiry is the same for all of these claims.

## 1. *Final Decision*

Plaintiff's claims are not ripe unless the DEP has reached a "final decision." A final decision is required because until one is reached, "it is impossible to tell whether the land retains any reasonable beneficial use. . . ." *Williamson*, 473 U.S. at 186, 105 S.Ct. 3108. This Court "cannot determine whether a plaintiff has been deprived of property, arbitrarily or otherwise, until it has a final decision before it." *Honess 52 Corp. v. Town of Fishkill*, 1 F. Supp.2d 294, 301 (S.D.N.Y. 1998) (Conner, Senior J.). In terms of plaintiff's equal protection claims, the court cannot evaluate whether similarly situated landowners were treated differently than plaintiff until it determines how the DEP and individual defendants enforced the Watershed Regulations as to Lakepointe Woods. *See Celentano v. City of West Haven*, 815 F. Supp. 561, 567 (D.Conn. 1993).

In order to have a final decision, "a development plan must be submitted, considered, and rejected by the governmental entity." *Unity Ventures*, 841 F.2d at 774. Even where the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until the plaintiff also seeks variances that would allow it to develop the property. *See Williamson*, 473 U.S. at 188, 105 S.Ct. 3108; *Xikis v. City of New York*, No. CV 89-2000, **1990 WL 156155, at \*4** (E.D.N.Y. Sept.28, 1990). In this case there is no question that there has been no final decision because plaintiff has yet to apply to the DEP for the necessary approval for his subdivision. Also, there is no final decision in DEP's attempts at acquisition of the property because the DEP has never made an official offer to purchase the property. Plaintiff concedes that his case is not in "strict compliance with *Williamson*," but argues that DEP's delays and bias have rendered efforts to obtain a final determination of plaintiff's application futile.

The Second Circuit has recognized a futility exception to the final decision requirement in land use cases. *See Southview Associates*, 980 F.2d at 98-99. Although the Second Circuit has not yet delineated the precise contours of the futility exception, *see Honess 52 Corp.*, 1 F. Supp.2d at 301, other circuits have interpreted the exception narrowly. Admitting that the exception is "far easier to conceptualize than define," the First Circuit has noted that "a sort of inevitability is required: the prospect of refusal must be certain." *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991). The Ninth Circuit has stated that "mere allegations by a property owner that is has done everything possible to obtain acceptance of a development proposal will not suffice to prove futility." *Herrington*, 857 F.2d at 570. To invoke the futility exception, most courts require the filing of at least one "meaningful application." *See Gilbert*, 932 F.2d at 61; *Kinzli v. City of Santa Cruz*, **818 F.2d 1449, 1454-55** (9th Cir. 1987) (noting that the Supreme Court in *MacDonald, Sommer Frates v. Yolo County*, 477 U.S. 340, 353, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), arguably gave approval to the "meaningful application" requirement); *Unity Ventures*, 841 F.2d at 775; *Celentano*, 815 F. Supp. at 569.

Defendants argue that plaintiff has failed to make a meaningful application to the DEP for approval of the Lakepointe Woods development. In response, plaintiff argues that if no application had been made then how did the DEP know to visit the Lakepointe Woods site. Despite the practical appeal of plaintiff's argument, plaintiff misunderstands the ripeness

requirement of a *meaningful* application, as opposed to mere notification that a piece of land is being developed. Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action. *See Unity Ventures,* 841 F.2d at 776; *Celentano,* 815 F. Supp. at 569.

The process by which a developer applies for DEP approval is set forth in the Watershed Regulations. *See* 10 N.Y.Comp.Codes R. Regs. tit. 10, § 128-2.3. The general requirements for an application are: (1) a description of the activity, the location and topography of the area; (2) a copy of any Environmental Assessment Form and a DEIS; and (3) a list of approvals from other agencies that applicant knows to be required and the status of those approvals. *See id.*

In June 1998, plaintiff completed and circulated a DEIS. (Compl. ¶ 65.) Even if defendant Kelly suggested to the Planning Board that plaintiff should file a supplement to the DEIS (Compl. ¶ 66), plaintiff could have applied to the DEP. Plaintiff had the ability to submit all of the required information. A complete application is not required in order to invoke the futility doctrine, only an application that would give the DEP the opportunity to definitively accept or reject the proposed development. In *Herrington,* the county's rejection of the plaintiff's incomplete development application, which was missing the Environmental Impact Report, was sufficient to constitute a final decision. 857 F.2d at 570. In the case at bar, plaintiff had the opportunity to submit an application to the DEP that would have been more complete than the application in *Herrington,* but failed to do so.

Plaintiff also alleges in his opposition to defendants' motion to dismiss that his allegations pertaining to the acquisition efforts are ripe because he has "availed himself of the City's prescribed acquisition methods." Plaintiff argues that because Sciabbarrasi abused these methods and ignored the protocol for acquisition efforts set forth in the New York City Watershed Memorandum of Agreement ("the MOA"), attempts to obtain a final decision are futile. However, this Court will not consider whether Sciabbarrasi violated the MOA. A motion to dismiss is addressed to the face of the pleading only. *See Goldman v. Belden,* 754 F.2d 1059, 1065-66 (2d Cir. 1985). This Court cannot consider the MOA because it is neither attached to the Complaint nor incorporated by reference. *See id.* In fact, the Complaint does not allege that Sciabbarrasi violated the MOA, therefore these allegations do not support invocation of the futility exception.

Although plaintiff is "not required to resort to piecemeal litigation or otherwise unfair procedures," *MacDonald,* 477 U.S. at 350 n. 7, 106 S.Ct. 2561, often courts have required more than one rejected application to invoke the futility exception. *See Xikis,* **1990 WL 156155, at \*4** (holding that plaintiff must seek a variance after denial of his application for re-zoning of his property before the case will be ripe). The Second Circuit has refused to apply the futility exception to the final decision requirement where the plaintiff has submitted, and had denied, only one application for a land-use permit. *See Southview Assocs.,* 980 F.2d at 98. Thus, even if plaintiff had made one meaningful application to the DEP, his case may be premature. A meaningful application alone may be insufficient to invoke the futility exception. *See Gilbert,* 932 F.2d at 61. The courts also have considered the defendant's hostility, delay and obstruction in application of the futility exception.

Plaintiff alleges that defendants were hostile to his development and conspired to prevent him from continuing the project. However, in *Tri-State Video Corp. v. Town of Stephentown,* mere allegations of open hostility were not sufficient to invoke the futility exception. No. 97 CV 965, **1998 WL 72331, at * 4** (N.D.N Y Feb.13, 1998). Although plaintiff's allegations of hostility are supported by allegations that Kelly failed to show up for site visits and misinterpreted the Watershed Regulations in order to make development of Lakepointe Woods more difficult, these allegations are insufficient to show that "the prospect of refusal is certain" and invoke the narrow futility exception.

Plaintiff also relies on his allegations of obstruction and delay by defendants in the site testing process to invoke the futility exception. In *Norco Const., Inc. v. King County* the Ninth Circuit recognized "a claim might also arise when it is clear beyond peradventure that excessive delay in such a final determination has caused the present destruction of the property's beneficial use." 801 F.2d 1143, 1145 (9th Cir. 1986). Yet in *Kinzli,* the court noted that "an excessive delay would have to be considerable" because in *Williamson* the court found the claim was not ripe despite an eight-year application process. **818 F.2d at 1454** n. 5. This Court has found that allegations of obstruction and delay demonstrated that a land use controversy was ripe, *see Honess 52 Corp.,* 1 F. Supp.2d at 301, but in that case the plaintiff's ability to develop the land soon would have expired under an earlier stipulation and the plaintiff and his predecessors-in-interest had been trying to develop the land for decades. In this case, plaintiff argues that it has never before taken him more than eighteen months to develop property, and because of defendants' obstruction and delay, he has been unable to complete Lakepointe Woods for more than three years. Even accepting plaintiff's facts as true for the purposes of this motion, a delay of three years is insufficient to create futility, especially when considered in comparison to the eight-year delay in *Williamson,* where the Supreme Court found the claim was not ripe.

Despite plaintiff's allegations of defendants' hostility and attempts to delay plaintiff's project, the futility exception is not applicable in this case. Plaintiff has failed to make a meaningful application to the DEP. Without a rejection of at least one meaningful application, this Court has no DEP decision or action to review. It is not the proper role of this Court to consider land-use issues prior to a final decision from the DEP. *See Tri-State Video Corp.,* **1998 WL 72331, at *4** ("It is well settled that federal courts should not act as municipal zoning boards of appeal . . ."). Without a final decision, plaintiff's claims are not ripe.

## 2. *Denial of State Compensation*

Even if plaintiff could invoke the futility exception to the final decision requirement, his claim would not be ripe because of his failure to show that New York State does not provide a remedy for the alleged violations. *See Williamson,* 473 U.S. at 194, 105 S.Ct. 3108. Seeking a "reasonable, certain and adequate provision for obtaining compensation," *id.,* is required with respect to due process, equal protection and takings claims. *See Rivervale Realty Co. v. The Town of Orangetown, New York,* 816 F. Supp. 937, 943 (S.D.N.Y. 1993). New York state law provides compensation for a de facto taking upon a showing of "legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property." *Sudarsky v. City of New York,* 779 F. Supp. 287, 301

(S.D.N.Y. 1991) ( *quoting City of Buffalo v. J.W. Clement Co.*, 28 N.Y.2d 241, 269 N.E.2d 895, 903, 321 N.Y.S.2d 345, 357 (1971)).

Seeking a state remedy is not required for a substantive due process claim based on arbitrary and capricious conduct. *See Southview Assocs.*, 980 F.2d at 95-96. However, because plaintiff has failed to meet the first prong of the *Williamson* ripeness test, it is irrelevant that plaintiff is not required to seek state compensation for his claim that defendants acted arbitrarily and capriciously.

Although plaintiff argues that New York State does not provide an adequate remedy, plaintiff is currently seeking compensation in the New York state courts. *See Goldfine v. City of New York*, Index No. 98/486. Because plaintiff's action in state court is still pending, this action in federal court is premature.

For the reasons stated above, plaintiff's claims for an unconstitutional taking, violations of equal protection and due process, found in Counts 1, 2, 3, 5, 6, 9, 10, 13, and 16 of the Complaint, are not ripe and must be dismissed.

## III. *Plaintiff's Supervisory Liability Claims*

Plaintiff asserts claims against defendants Lloyd and Polesi based on an alleged failure to adequately supervise Kelly. Under § 1983, a supervisor may be liable for the acts of subordinates, "but only where an act or omission of the supervisor himself can be affirmatively linked to the subordinate's behavior." *Sanchez v. Figueroa*, 996 F. Supp. 143, 146 (D.Puerto Rico 1998). The doctrine of respondeat superior may not be invoked to impose § 1983 liability on a supervisor for conduct of a subordinate. *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Supervisory liability under § 1983 requires that defendant (1) participated directly in an alleged constitutional violation; or (2) failed to remedy a wrong after being informed of the violation through a report or appeal; or (3) created a policy or custom under which unconstitutional practices occurred; or (4) was grossly negligent in supervising subordinates; or (5) exhibited deliberate indifference to the rights of the plaintiff. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). However, "for a supervisor to be liable under § 1983, there must have been an underlying constitutional violation." *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999). Here, plaintiff's § 1983 claims are not ripe. Because this Court cannot determine whether plaintiff has adequately alleged constitutional violations, plaintiff's supervisory liability claims against Lloyd and Polesi are premature. Therefore, defendants' motion to dismiss is granted as to plaintiff's supervisory liability claims, Counts 8 and 12 of the Complaint.

## IV. *Municipal Liability Claim*

To hold a municipality liable in a § 1983 cause of action, a plaintiff must show an official policy or custom that causes the plaintiff to be subjected to a denial of a constitutional right. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

In the case at bar, plaintiff has alleged that the City has by a custom or policy induced the DEP "to use whatever tactics it deems necessary to protect its water supply even though the federally guaranteed rights of property owners in upstate counties might be violated." (Compl. ¶ 225). However, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support . . . such an inference." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995). In addition to allegations of the custom or policy, Plaintiff has alleged that defendants Kelly and Lloyd made arbitrary and capricious decisions as to water courses and attempted to delay the development of Lakepointe Woods. Further, plaintiff alleges that as part of the DEP's custom or policy to protect its water supply at all costs, defendant Sciabbarrasi violated procedures for the acquisition of plaintiff's property by failing to furnish a second appraisal and failing to make a written offer for the purchase of the property. Considering these allegations in the light most favorable to plaintiff, they are sufficient to support an inference that the City had a custom or policy to "use whatever tactics it deems necessary to protect its water supply."

To survive a motion to dismiss on this claim, plaintiff must also adequately allege that the City's custom or policy caused plaintiff to be subjected to the denial of a constitutional right. Plaintiff's Complaint is unclear as to what constitutional violations are alleged to have been caused by the City's custom or policy, therefore this Court will consider the Complaint to allege both a violation of equal protection and a violation of due process.

Plaintiff alleges that the City's custom or policy "deprives owners within DEP's 'critical acquisition zone' of equal protection under the zoning laws . . ." (Compl. ¶ 228.) A selective enforcement equal protection claim is proper when plaintiff alleges that:

(1) the person, compared with others similarly situated, was selectively treated, and

(2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Zahra,* 48 F.3d at 684.

As discussed above, the ripeness doctrine developed in *Williamson* for takings claims also applies to equal protection claims. *See Southview Assocs.,* 980 F.2d at 96-97. Because the City has not made a final decision regarding plaintiff's development of the Lakepointe Woods property, plaintiff's allegation that the City violated his right to equal protection under the zoning laws is not ripe for review.

Plaintiff's 13th cause of action also may be interpreted as a municipal liability claim based upon an allegation of a substantive due process violation. Plaintiff alleges that the City's custom or policy to "protect its water supply at all costs" violated due process "because the law requires the issuance of approvals where certain objective criteria are met." (Compl. ¶ 227.) To properly allege a substantive due process violation, plaintiff must establish that he had a valid property interest and that defendant acted in an arbitrary and capricious manner in depriving him of that property interest. *See Southview Assocs.,* 980 F.2d at 102.

This Circuit applies a strict entitlement test to determine whether a party has a valid property interest. *See Zahra*, 48 F.3d at 680. The entitlement analysis "focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision." *Id.* Because the City has broad discretion to approve or reject plaintiff's subdivision plans, plaintiff has no property interest in the approval of the development of Lakepointe Woods.

However, even if plaintiff does have a property interest, the City has not issued a final decision regarding Lakepointe Woods. Without a final decision from the City, it is impossible for this Court to determine whether the City acted in an arbitrary or capricious manner with regard to plaintiff's alleged property interest. See *Kinzli*, **818 F.2d at 1456**. Therefore, whether plaintiff's municipal liability claim is based upon violations of equal protection or substantive due process, this claim must be dismissed because it is not ripe for review.

## V. *Conspiracy Claims under § 1983*

In Counts 4, 7, 11 and 14, plaintiff brings claims under 42 U.S.C. § 1983 against defendants Kelly, Sciabbarrasi, Lloyd and Nelson for participation in a conspiracy to interfere with his civil rights. Plaintiff alleges that Nelson, who is the president of the Sedgewood Club's homeowner's association, conspired with DEP employees to thwart plaintiff's development of his land through delay and frustration of plaintiff's approval process with the DEP.

To establish a conspiracy claim under § 1983 plaintiff must show not only that defendants "acted in a willful manner, culminating in an agreement, understanding, or `meeting of the minds,'" *Duff v. Coughlin*, 794 F. Supp. 521, 525 (S.D.N Y 1992), but also must prove an actual violation of his federal rights. *See Fincher v. County of Westchester*, 979 F. Supp. 989, 997 (S.D.N.Y. 1997). In reference to a § 1983 conspiracy claim, the Second Circuit has stated: ". . . the lawsuit will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

In the case at bar, plaintiff's allegations of federal rights violations are not ripe for review. Without the ability to decide whether plaintiff has adequately alleged violations of his federal rights, this Court cannot determine whether plaintiff has stated a claim for conspiracy to violate his civil rights under § 1983. Therefore, plaintiff's conspiracy claims based upon § 1983 are not ripe and must be dismissed.

## VI. *Conspiracy Claim under § 1985*

Plaintiff's 15th cause of action is an allegation against all named defendants of a conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985. (Compl. ¶¶ 238-44.) In order to state a claim under § 1985, plaintiff must allege that defendants have, "with racial or other class-based discriminatory animus, conspired to deprive him of a constitutional or other federal right." *Philippeaux v. North Central Bronx Hosp.*, 871 F. Supp. 640, 656 (S.D.N.Y. 1994) (citing *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990)).

Plaintiff fails to allege that defendants discriminated against him based on his membership in a "protected class." In *Carino v. Town of Deerfield*, 750 F. Supp. 1156, 1170 (N.D.N.Y. 1990), the court dismissed a conspiracy claim under § 1985 brought by property owners and their son because they were not members of a protected class. In *United Brotherhood of Carpenters Joiners of America, Local 610, AFL-CIO v. Scott,* the Supreme Court refused to construe § 1985 to reach conspiracies motivated by economic or commercial animus. 463 U.S. 825, 838, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Even reading the Complaint to allege that plaintiff is a member of a protected class of owners of land in the DEP's critical area, § 1985 was not "intended to reach conspiracies motivated by bias towards others on account of their economic . . . activities." *Id.* at 837, 103 S.Ct. 3352. Because plaintiff has failed to allege that defendants discriminated against him because of his membership in a protected class, plaintiff's cause of action for a conspiracy under § 1985 must be dismissed.

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is granted in full. Counts 1-14 and 16 of plaintiff's Complaint are dismissed without prejudice as premature. Count 15, plaintiff's cause of action pursuant to 42 U.S.C. § 1985 is dismissed with prejudice.

SO ORDERED.

# Comments



# EXHIBIT

# "B"

 Outlook

---

**Fw: My Plan in order to Exit the bankrupcty Court.**

---

From  Gideon Raviv <gideon1818@hotmail.com>
Date  Fri 7/11/2025 11:32 PM
To    Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Sunday, April 6, 2025 11:47 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** My Plan in order to Exit the bankrupcty Court.

Dear Mr. Portilla,

I have a plan to exit the Bankruptcy Court that you will see in the following email.

I would like you to understand the direction and the idea behind my plan and before you

Submit it let discuss please  between us the minuses and pluses and if it reasonable offer according

To your judgment.

1.Not to allow a sale of my Hyde Park property.

2.I will take a partner on the Hyde Park equity in order to pay out to all the creditors according to the plan.

3 Behind chapter 11 is the idea to allow business to continue to function and not to destroy them.   The Lender

   is the only one secure creditor  and Ensches to see profit from the sale.  See in my plan all about him (Eric Goldfine).

   He was my lender at all. He bought the note and the right in the middle of the Foreclosure action, because he is a gambler

   but not a lender.

4. Therefore, in my plan I am offering him a payment of 100% of out of pocket payments, but no interest and legal payment.  What

   do you think about.

5. Also, to all unsecured creditors I am offering 50%.

6.  In this way everyone get a share.

7.  If you think that my plan have a good chance to be approved by the Judge then lets move it on in our next

hearing before Hon. Judge Lord

this week on Wednesday April 8, 2025.

Please Let me know your opinion asap.

Thank you.

Gideon Raviv

# EXHIBIT

# "C"

 **Outlook**

---

[Draft] **Re: Proposal plan for 68 Burns New Holdings, Inc - Debt. Case # 24-44132-jmm in chapter-11**

From

Draft saved Sat 7/12/2025 2:56 PM

To          Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@homail.com>
**Sent:** Sunday, April 6, 2025 11:53 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Fw: Proposal plan for 68 Burns New Holdings, Inc - Debt. Case # 24-44132-jmm in chapter-11

T H E     P L A N
+++++++++++++

Attachment -on left The   "EBT"   on the Right - Exhibit " C ".

BACKGROUND;
I am 86 year old and the owner of this company since February 1998.     Never I had been in this situation and try to save my company assets
That I worked for all my life and this is my only assets that I am able to count for my future.  Therefore,  with all the difficulties that this situation
Created I would like to submit to this honorable court a fair and balance proposal   that should satisfied all the creditors and the court will allow
me to continue the subdivision mission on my Hyde Park land in order to start the construction and to develop a new housing project.

THE  CREDITORS;
There are two type of creditors that are involved in this case.
    A) Secured
    B) Unsecured.

In Group "A" - one participant ;  ERIC GOLDFINE SELF EMPLOYED RETIREMENT TRUST PLAN.

In Group "B" are 5 participants;
    1. Gideon Raviv
    2. Foster Gravey P.C.
    3. Rosenberg Fortuna & Laitman LLC
    4. Hyde Park Town
    5. All Space Self Storage

PAYMENTS  PROPOSAL;

# EXHIBIT

# "D"

Firefox                                    https://outlook.live.com/mail/0/inbox/id/AAkALgAAAAAAHYQ...

 Outlook

---

## Fw: Proposal plan for 68 Burns New Holdings, Inc - Debt. Case # 24-44132-jmm in chapter-11

---

From Gideon Raviv <gideon1818@hotmail.com>
Date  Fri 7/11/2025 11:34 PM
To    Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Saturday, April 19, 2025 11:21 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Proposal plan for 68 Burns New Holdings, Inc - Debt. Case # 24-44132-jmm in chapter-11

Hi Mr. Portilla,
I hope that your are feeling good and enjoying the holidays time.    Regarding to my case of Chapter 11 in the US
Bankruptcy court,  I would like to ask you the following;
1.MY  PLAN;  I submitted to you my plan on April 6, 2025 that are attached and up to now did not get your comments.  Why ?
2.HEARING BEFORE HON. JUDGE LORD on 4/08/2025;  May I know if the hearing took place and if yes, what had been discussed.
   What had been ordered if at all,  when will be the next hearing.
Please let me know all of the above asap.
Thank you.

Gideon Raviv

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Sunday, April 6, 2025 11:57 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Fw: Proposal plan for 68 Burns New Holdings, Inc - Debt. Case # 24-44132-jmm in chapter-11

---

The Future can be brighter than now,  by using my plan to correct the current situation with the help of the bankruptcy court.

T H E   P L A N ;

BACKGROUND;
I am 86 year old and the owner of this company since February 1998.    Never I had been in this situation and try to save my company assets
That I worked for all my life and this is my only assets that I am able to count for my future.  Therefore,  with all the difficulties that this situation
Created I would like to submit to this honorable court a fair and balance proposal   that should satisfied all the creditors and the court will allow
me to continue the subdivision mission on my Hyde Park land in order to start the construction and to develop

# EXHIBIT

# "E"

Firefox

 Outlook

---

**Fw: 68 burns insurance cert. and 2023 tax return.**

---

**From** Gideon Raviv <gideon1818@hotmail.com>

**Date** Fri 7/11/2025 11:38 PM

**To**    Gideon Raviv <gideon1818@hotmail.com>

📎 1 attachment (1 MB)

image.pdf;

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Monday, April 28, 2025 10:44 AM
**To:** Julio E, Portilla <jp@julioportillalaw.com>
**Subject:** Fw: 68 burns insurance cert. and 2023 tax return.

---

Dear Mr. Portilla,
I heard today from the trustee that your mother is sick and i wish her a quick recovery. Regarding the trustee requested for
Documents, .I submit now to you again 2 of them;

 1.The Insurance of the land and the explanation that i just got from the insurance.
 2.68 Burns New Holdings, Inc Tax return for 2023.

I am requesting again to set down this week at any time you like in order to finalized my Bankruptcy situation which will bring money and finish
this event. On my mind;
      a)The Plan.
     b)Requesting to allow me to use a broker in order to find a partner or sale the Hyde Park property.
     c)To allow the Appellate Division 2md Dept. to continue with our Appeal to cancel the Judgment.
Please let me know when we can do it.
Thank you.
Gideon Raviv

# EXHIBIT "F"

Firefox

https://outlook.live.com/mail/0/inbox/id/AAkALgAAAAAAHYQ...

 **Outlook**

## Fw: 68 Burns New Holdings Inc Case No. 1-24-45157-nhl

**From** Gideon Raviv <gideon1818@hotmail.com>
**Date** Fri 7/11/2025 11:13 PM
**To**    Gideon Raviv <gideon1818@hotmail.com>

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Thursday, February 6, 2025 1:02 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: 68 Burns New Holdings Inc Case No. 1-24-45157-nhl

Dear Mr. Portilla,

Yesterday I asked you to answer few questions about the coming Court day tomorrow in the above case and up to now - I did not hear back from you.
Kindly write or call in order that I will know what happened and what are going to be.
Please see it as urgent to be ready.
Thank you.
Gideon Raviv

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Wednesday, February 5, 2025 2:14 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: 68 Burns New Holdings Inc Case No. 1-24-45157-nhl

HI Mr. Portilla,
As you are aware on Friday,  February 7, 2025 at 12;30 we ordered by the Trustee of the Bankruptcy Court  to  testified
About my Case of 68 Burns New Holdings, Inc.
Accordingly,  please let me know, as follow;
1.Do we need to go to his office, if yes where we should be.
2.What do I need to bring with me.
3. On what subjects  do I need to be ready.
4.Did you submit to his office the report and the documentation that you promised to deliver in our last phone conversation.
5. Can you please email me a copy.
6. Do we need to talk before this meeting, if yes - when.
Please let me know.
Thank you.
Gideon Raviv

7/12/2025, 4:45 PM

# EXHIBIT

# "G"

 Outlook

## Fw: Eric Goldfine, Self-Employment Retirement Plan and Trust v 68 Burns New Holdings, Inc. 21024-5304/11784/11789/12368

From Gideon Raviv <gideon1818@hotmail.com>
Date Fri 7/11/2025 11:18 PM
To    Gideon Raviv <gideon1818@hotmail.com>

🖉 1 attachment (140 KB)
Eric Goldfine Trust v 68 Burns New Holding 2024-05304 OSC.pdf;

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Friday, February 7, 2025 1:40 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Fw: Eric Goldfine, Self-Employment Retirement Plan and Trust v 68 Burns New Holdings, Inc. 21024-5304/11784/11789/12368

Dear Mr. Portilla,
I attached The  Appeal  that are in front of the Appellate Division 2th Dept. that was stop because of my filing Ch. 11 in the Bankruptcy Court.
Kindly submit an urgent request to the Bankruptcy Court to allow the Appellate Division 2th Dept. to continue their review of 68 Burns New Holdings, INC
of the Appeal in Case No. 2024-12368 and submit their decision to the Bankruptcy Court.
I am sure that their decision will serve fairly all the parties that are part of 68 Burns New Holdings, Inc  case.
Please do it by coming Monday.
Thank you.
Gideon Raviv

**From:** Maurice Heller <maurice.heller@foster.com>
**Sent:** Wednesday, November 27, 2024 3:36 PM
**To:** Gideon Raviv <gideon1818@hotmail.com>
**Subject:** Fwd: Eric Goldfine, Self-Employment Retirement Plan and Trust v 68 Burns New Holdings, Inc. 21024-5304/11784/11789/12368

They struck out the TRO but set the return date for December 6, which means we might have a decision before the sale date.  No guarantees.

**Maurice W. Heller**
**Principal**

*Tel:* 212.965.4530 ▪ *Fax:* 212.334.1278
maurice.heller@foster.com

# EXHIBIT

# "H"

 **Outlook**

## Fw: Eric Goldfine, Self-Employment Retirement Plan and Trust v 68 Burns New Holdings, Inc. 21024-5304/11784/11789/12368

**From** Gideon Raviv <gideon1818@hotmail.com>
**Date** Fri 7/11/2025 11:21 PM
**To**  Gideon Raviv <gideon1818@hotmail.com>

📎 1 attachment (1 MB)
Sponser - 68 Burns New Holdings, Inc..pdf;

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Saturday, February 15, 2025 5:49 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Fw: Eric Goldfine, Self-Employment Retirement Plan and Trust v 68 Burns New Holdings, Inc. 21024-5304/11784/11789/12368

Mr. Portilla,
According to your request from yesterday, I submit to you the names and the locations that my company (68 Burns.new Holdings, Inc) own at the time we filed
this case in the Bankruptcy Court;

1. 149,2 Acres on 710 Route 9, Hyde Park, N.Y. 12538
2. The rights of all the spaces beside the Apartments and the Garages of the coop 5 buildings at 68-12,68-20, 68-30,68=36 & 68-44 Burns street, Forest Hills, NY. 11375.
   Attached a settlement with the coop in federal Court that they agreed in 1998 to recognize that "68 burs" as the rights as sponsor. According to the offering plan
   the sponsor sold to the coop the apartments and the Garages.
   ·Please rush the motion to the court regarding their request from the Appellate Division 2nd Dept. to decide our appeal regarding to Hyde Park that are in their position.
   Please let me know what material, documents and any plan will be needed while we see the Judge on February 25, 2025 at 2;00 pm.
   Thank you.
   Gideon Raviv

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Monday, February 10, 2025 7:06 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Eric Goldfine, Self-Employment Retirement Plan and Trust v 68 Burns New Holdings, Inc. 21024-5304/11784/11789/12368

# EXHIBIT

## "I"

Firefox                                    https://outlook.live.com/mail/0/inbox/id/AAkALgAAAAAAHYQ...

 **Outlook**

---

**Fw: Motion to hon. Judge Lord**

From   Gideon Raviv <gideon1818@hotmail.com>
Date   Fri 7/11/2025 11:44 PM
To     Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Tuesday, May 13, 2025 4:11 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Motion to hon. Judge Lord

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Tuesday, May 13, 2025 4:08 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Motion to hon. Judge Lord

Dear Mr. Portilla,

In our meeting at your office on May 8, 2025 you told the following;

   1. By Friday, May 11, 2025 you will submit a motion to the court about 2 subjects;
   a) Deny the accounting of Eric Goldfine that submitted to the court by Richard DuVal.
   b) You will bring to court attention that the Foreclosure Judgment was wrong and we filed an appeal
     by the appellate division 2nd dept. Before we filed this Bankruptcy case and we requesting her to
     release the appellate division from the Stay and allow them to finish their review and decision on the
Appeal.

   2.  Please let me know if it was done and filed.
Thank you.
Gideon Raviv

1 of 1                                                                      7/13/2025, 3:43 PM

# EXHIBIT

# "J"

Firefox                                                    https://outlook.live.com/mail/0/inbox/id/AAkALgAAAAAAHYQ...

 Outlook

---

## Fw: Motion to hon. Judge Lord

From  Gideon Raviv <gideon1818@hotmail.com>

Date  Fri 7/11/2025 11:45 PM

To    Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Wednesday, May 14, 2025 3:03 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Motion to hon. Judge Lord

DEAR MR. PORTILLA,
PLEASE RESPOND TO MY EMAIL FROM YESTERDAY.     I MUST KNOW THAT YOU PREPERED THE MOTION TO THE COURT
AND SENT IT ACCORDING YOUR DECISION IN OUR MEETING AT YOUR OFFICE ON MAY 8, 2025.
THANK YOU.
GIDEON RAVIV

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Tuesday, May 13, 2025 4:11 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Motion to hon. Judge Lord

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Tuesday, May 13, 2025 4:08 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Motion to hon. Judge Lord

Dear Mr. Portilla,

In our meeting at your office on May 8, 2025 you told the following;

 1. By Friday, May 11, 2025 you will submit a motion to the court about 2 subjects;
 a) Deny the accounting of Eric Goldfine that submitted to the court by Richard DuVal.
 b) You will bring to court attention that the Foreclosure Judgment was wrong and we filed an appeal
 by the appellate division 2nd dept. Before we filed this Bankruptcy case and we requesting her to
 release the appellate division from the Stay and allow them to finish their review and decision on the
Appeal.

 2. Please let me know if it was done and filed.
Thank you.

Gideon Raviv                                                    7/13/2025, 3:44 PM

# EXHIBIT "K"

 **Outlook**

## Fw: Motion to hon. Judge Lord

**From** Gideon Raviv <gideon1818@hotmail.com>
**Date** Sat 7/12/2025 12:28 AM
**To**    Gideon Raviv <gideon1818@hotmail.com>

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Thursday, May 15, 2025 9:43 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Motion to hon. Judge Lord

Mr. Portilla,
I fell that you are declined to answer all my emails and my phone calls.   You are aware that my
situation is very uncomfortable and without a lawyer support
It is a loosing situation and can only damage my case and my current effort to finalize the case, in the
court.
If you can not do your work and represent my company professionally as you Promiss,  then please
say it.
But, This behaivour MUST be stop now.
Please answer me today.
Respectfully,
Gideon Raviv

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Wednesday, May 14, 2025 3:03 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Motion to hon. Judge Lord

DEAR MR. PORTILLA,
PLEASE RESPOND TO MY EMAIL FROM YESTERDAY.    I MUST KNOW THAT YOU PREPERED THE
MOTION TO THE COURT
AND SENT IT ACCORDING YOUR DECISION IN OUR MEETING AT YOUR OFFICE ON MAY 8, 2025.
THANK YOU.
GIDEON RAVIV

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Tuesday, May 13, 2025 4:11 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Motion to hon. Judge Lord

# EXHIBIT

# "L"

 **Outlook**

---

## Fw: Answer Eric Goldfine motion and submit our motion for a payment settlement.

From   Gideon Raviv <gideon1818@hotmail.com>
Date   Fri 7/11/2025 11:47 PM
To     Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Monday, May 19, 2025 9:26 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Answer Eric Goldfine motion and submit our motion for a payment settlement.

Dear Mr. Portilla,

On Thursday, May 15, 2025 we had our last phone conversation about providing the court our opposition to Eric Goldfine motion

To remove the stay and to request the court to remove the stay from the Appellate division 2nd department and to allow them to

Continue to review and decide our Appeal of the supreme court Judgment, that was stop by the bankruptcy court since we filed our

Claim for Chapter 11 in this court.      You promised to filed those motions papers by Monday, May 19, 2025 with a copy to me.

So far, I didn't got any copy and I would like to know if you wrote those motions and filed them.

Please let me know.

Thank you.

Gideon Raviv

# EXHIBIT

# "M"

 Outlook

---

**Fw: Answer Eric Goldfine motion and submit our motion for a payment settlement.**

---

From  Gideon Raviv <gideon1818@hotmail.com>
Date  Fri 7/11/2025 11:48 PM
To     Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Friday, May 23, 2025 10:11 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Answer Eric Goldfine motion and submit our motion for a payment settlement.

Mr. Portilla,
Did you finish it and submitted?
Please let me know and email me a copy please.
Thank you.
Gideon Raviv

---

**From:** Julio E. Portilla <jp@julioportillalaw.com>
**Sent:** Tuesday, May 20, 2025 3:22 PM
**To:** Gideon Raviv <gideon1818@hotmail.com>
**Subject:** RE: Answer Eric Goldfine motion and submit our motion for a payment settlement.

Gideon:

I am working on it.  I will update once it's done.



LAW OFFICE OF
JULIO E. PORTILLA
P.C.

380 LEXINGTON AVENUE, 4TH FLOOR
NEW YORK, NY 10168
TEL. (212) 365-0292
FAX. (212) 365-4417

The information contained in this e-mail message, including attachments (collectively referred to as "Information"), is strictly confidential, proprietary, and privileged. This information is intended only for the personal and confidential use of the recipient(s) named above. The information in this email should not be replicated or disclosed to anyone other than the intended recipient(s). If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or reproduction of this Information is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or by telephone at (212) 365-0292 and delete the original message.

# EXHIBIT

# "N"

Firefox

https://outlook.live.com/mail/0/inbox/id/AAkALgAAAAAAHYQ...

 Outlook

---

**Fw: Answer Eric Goldfine motion and submit our motion for a payment settlement.**

---

From   Gideon Raviv <gideon1818@hotmail.com>

Date   Fri 7/11/2025 11:49 PM

To     Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Saturday, May 24, 2025 7:26 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Answer Eric Goldfine motion and submit our motion for a payment settlement.

Mr. Portilla,
It is already more then TWO ( 2 ) weeks since you promised in our meeting on May 8, 2025  that " Tomorrow"
you will submit to
The court  a respond and opposition to Eric Goldfine request to remove the stay and to allow the Appellate
Division 2nd Department
To continue to review and decide on our Appeal that 68 Burns new Holdings, Inc submitted to the Appellate
division in November 2024
And they had been stopped by the stay of the Hon. Bankruptcy court on December 10, 2024.
On May 20,2025 in an answer to the same question you answer me; "I am working on it" and now after
another FIVE  ( 5 ) days did you
Submit those  papers to the court?
If yes, please provide me with a copy.
Thank you for a quick respond.
Gideon Raviv

---

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Friday, May 23, 2025 10:11 AM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Answer Eric Goldfine motion and submit our motion for a payment settlement.

Mr. Portilla,
Did you finish it and submitted?
Please let me know and email me a copy please.
Thank you.
Gideon Raviv

---

**From:** Julio E. Portilla <jp@julioportillalaw.com>
**Sent:** Tuesday, May 20, 2025 3:22 PM
**To:** Gideon Raviv <gideon1818@hotmail.com>
**Subject:** RE: Answer Eric Goldfine motion and submit our motion for a payment settlement.

Gideon:

# EXHIBIT

# "O"

Firefox                                                    https://outlook.live.com/mail/0/inbox/id/AAkALgAAAAAAHYQ...

 **Outlook**

---

## Fw: 68 Burns New Holdings, Inc - Court case.

---

**From** Gideon Raviv <gideon1818@hotmail.com>
**Date** Fri 7/11/2025 10:56 PM
**To**   Gideon Raviv <gideon1818@hotmail.com>

---

**From:** Julio E. Portilla <jp@julioportillalaw.com>
**Sent:** Saturday, June 28, 2025 11:02 AM
**To:** Gideon Raviv <gideon1818@hotmail.com>
**Subject:** Re: 68 Burns New Holdings, Inc - Court case.

Hi Mr. Raviv:
 We will meet Monday or Tuesday.  I am thinking if we get this case in order maybe I can convince the Trustee to agree to vacate the conversion.  I am working on the Monthly operating  reports and will send documents to Trustee as well.


*Julio E. Portilla. Esq.*
Law Office of Julio E. Portilla, P.C.
380 Lexington Avenue, Suite 446
New York, NY 10168
Tel: 212.365.0292
Fax: 212.365.4417
Email: jp@julioportillalaw.com
Web: www.julioportillalaw.com


The information contained in this email message, including attachments (collectively referred to as "Information"), is strictly confidential and proprietary, and/or privileged. This information is intended only for the personal and confidential use of the recipient(s) named above. The Information contained in this email should not be replicated or disclosed to any persons other than the intended recipient(s). If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or reproduction of this Information is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail, or by telephone at (212) 365-0292, and delete the original message.


On Jun 28, 2025, at 11:52 AM, Gideon Raviv <gideon1818@hotmail.com> wrote:

# EXHIBIT

# "P"

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Wednesday, July 2, 2025 2:12 PM.
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Law Office of Julio E. Portilla, P.C. has sent you a new message in the client portal

Dear Mr. Portilla,
24 hours ago you called me in order to speak on something that are very important.  I was c
and told you that I will call you back in a few moments and I did in 5 minutes.
Then you told me that you are going to call me back in a few moments. Up to now I did not
you.
Can you kindly tell me in writing or call me - what do you have in mind to tell me.    Is it Imp
then what are you waiting for?
Also I sent you few questioned last night that are in the bottom  of this email.    Do I deserv
what did you do with the operational report and what are you going to do  with the wrong
About removing my case from ch.11 to Ch. 7.
I deserve your answers now.
Thank you.
Gideon Raviv

# EXHIBIT

# "Q"

Firefox                                    https://outlook.live.com/mail/0/inbox/id/AAkALgAAAAAAHYQ...

 Outlook

---

**(No subject)**

---

**From** Gideon Raviv <gideon1818@hotmail.com>
**Date** Sat 7/12/2025 2:44 PM
**To**    Gideon Raviv <gideon1818@hotmail.com>

**From:** Julio E. Portilla <jp@julioportillalaw.com>
**Sent:** Wednesday, July 2, 2025 1:22 PM
**To:** Gideon Raviv <gideon1818@hotmail.com>
**Subject:** RE: Law Office of Julio E. Portilla, P.C. has sent you a new message in the client portal

Mr. Raviv:

I apologize for missing your callback. I was tied up with another matter. Thank you for your patience. I am currently finalizing the operating reports and expect to complete them by Monday, July 7, 2025. Once these are filed and the outstanding documents are submitted, I will proceed with filing an objection to the Order. Please let me know if you need any additional information or assistance in the meantime.

.



LAW OFFICE OF
JULIO E. PORTILLA
——————— P.C. ———————

380 Lexington Avenue, 4th floor
New York, NY 10168
Tel. (212) 365-0292
Fax. (212) 365-4417

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Wednesday, July 2, 2025 2:12 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Law Office of Julio E. Portilla, P.C. has sent you a new message in the client portal

Dear Mr. Portilla,
24 hours ago you called me in order to speak on something that are very important. I was on the line and told you that I will call you back in a few moments and I did in 5 minutes.
Then you told me that you are going to call me back in a few moments. Up to now I did not hear from you.
Can you kindly tell me in writing or call me - what do you have in mind to tell me.   Is it Important, then what are you waiting for?
Also I sent you few questioned last night that are in the bottom  of this email.   Do I deserve to know

1 of 2                                                                               7/13/2025, 4:21 PM

# EXHIBIT "R"

 Outlook

**Fw: Eric Goldfine and OFFICIAL FORM 410 Proof of Claim ( See Paragraph 1 of the form.) Case 1-24-45157-nnl**

**From** Gideon Raviv <gideon1818@hotmail.com>

**Date** Fri 7/11/2025 10:58 PM

**To**    Gideon Raviv <gideon1818@hotmail.com>

**From:** Julio E. Portilla <jp@julioportillalaw.com>
**Sent:** Tuesday, June 3, 2025 1:23 PM
**To:** Gideon Raviv <gideon1818@hotmail.com>
**Subject:** RE: Eric Goldfine and OFFICIAL FORM 410 Proof of Claim ( See Paragraph 1 of the form.) Case 1-24-45157-nnl

I am working on a response but I am also trying dissect your reasoning.



**LAW OFFICE OF**
**JULIO E. PORTILLA**
P.C.

380 LEXINGTON AVENUE, 4TH FLOOR
NEW YORK, NY 10168
TEL. (212) 365-0292
FAX. (212) 365-4417

The information contained in this e-mail message, including attachments (collectively referred to as "Information"), is strictly confidential, proprietary, and privileged. This information is intended only for the personal and confidential use of the recipient(s) named above. The information in this email should not be replicated or disclosed to anyone other than the intended recipient(s). If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or reproduction of this Information is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or by telephone at (212) 365-0292 and delete the original message.

**From:** Gideon Raviv <gideon1818@hotmail.com>
**Sent:** Tuesday, June 3, 2025 2:20 PM
**To:** Julio E. Portilla <jp@julioportillalaw.com>
**Subject:** Re: Eric Goldfine and OFFICIAL FORM 410 Proof of Claim ( See Paragraph 1 of the form.) Case 1-24-45157-nnl

Mr. Portilla,